**FILED**

**December 11, 2015**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 9:11 AM**



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | |
|---|---|
| Kyle Johnson | ) Docket No.: 2015-01-0148 |
|     Employee, | ) |
| v. | ) State File Number: 6636-2015 |
| Stanley Black & Decker, Inc. | ) |
|     Employer, | ) Judge Audrey A. Headrick |
| And | ) |
| The Hartford | ) |
|     Insurance Carrier. | ) |
| | ) |

## EXPEDITED HEARING ORDER DENYING
## REQUESTED BENEFITS

This matter came before the undersigned Workers' Compensation Judge on the Request for Expedited Hearing filed by the Employee, Kyle Johnson, on September 11, 2015. The central legal issue is whether Mr. Johnson sustained an injury arising primarily out of and in the course and scope of employment. Based on the evidence before it at this time, the Court finds Mr. Johnson is unlikely to prevail at a hearing on the merits in proving compensability at a Compensation Hearing and denies his request for temporary disability and medical benefits.[1]

### History of Claim

Mr. Johnson is a thirty-five-year-old resident of Whitfield County, Georgia. (T.R. 1.) He worked at Stanley as an installation technician and systems integrator.[2] *Id.* Mr. Johnson seeks medical and temporary disability benefits for a low back injury that allegedly occurred on January 20, 2015, while loading a piece of equipment into a truck. *Id.*

Mr. Johnson testified he drove a company van that he kept at home. He had a company card to use for business expenditures and a Fleet card to purchase fuel. Mr. Johnson began working for Stanley in February 2014. From October 2014 through

---

[1] A complete listing of the technical record and exhibits is attached to this Order as an appendix.

[2] Mr. Johnson testified he installed security systems on residential and commercial properties.

1

January 2015, Mr. Johnson testified his company van required repair approximately seven to nine times by Mountain View Chevrolet. Stanley rented a Ford F350 one-ton dually from Enterprise Rent-A-Car for Mr. Johnson's use during the times his company van was in the shop. Mr. Johnson testified he facilitated getting the company van to Mountain View and picking up the rental truck at Enterprise, which is located right down the road from Mountain View.

Due to Mr. Johnson unloading his tools from the company van and loading his tools onto the rental truck, Stanley purchased weatherproof job boxes for him to use to make the transition easier. Mr. Johnson testified he initially transitioned his tools in the parking lot at Mountain View. However, since it took him a little over three hours to transfer his tools in the parking lot, Mr. Johnson testified someone at Mountain View asked him to make other arrangements and do the transition elsewhere. (Ex. 1.) Mr. Johnson testified Doug Welch, his supervisor, told him he could do the tool transition at his home. *Id.* He stated doing the tool transition at his home took no more than an hour. However, in Mr. Johnson's transcribed, recorded statement taken on or about January 29, 2015, he stated, in part, "it doesn't take more than ten minutes for me to load my tools up, if even that." (Ex. 1, 1-C at 16.)

On Friday, January 16, 2015, Mr. Johnson testified he did not work. He testified he could not recall what he did on January 16, 2015, through January 18, 2015, when he was off work. On Monday, January 19, 2015, Mr. Johnson testified he did not work because he and his kids were sick. On Tuesday, January 20, 2015, Mr. Johnson testified he got up that morning and went out to the rental truck to load the tools into his truck. As he loaded the job boxes and picked one up at waist-height, he heard or felt a pop and experienced severe pain in his back down into his right leg. He stated he dropped the box and got his wife, Christina Johnson, who helped finish loading the truck. On cross-examination, Mr. Johnson testified Mrs. Johnson could lift 100-pound storage boxes.

After loading the truck, Mr. Johnson testified he drove to his office. On his way, Mr. Johnson spoke with his wife, who insisted he tell Mr. Welch about the incident. Mr. Johnson testified he went to Mr. Welch's office and told him what happened to his back. He stated Mr. Johnson kept talking about jobs in the forecast and acted as if he had not said anything. Mr. Johnson testified he took Aleve and worked that day and the following day. He stated he took Thursday off due to his kids being sick.

Mr. Johnson testified a co-worker, Kevin Masticola, worked with him one to one and a half days that week. He stated he did not make any complaints to Mr. Masticola about his back. In the affidavit of Mr. Masticola, he stated he worked with Mr. Johnson between January 20, 2015, and January 23, 2015. (Ex. 7.) Mr. Masticola testified Mr. Johnson "performed strenuous work during that time and showed no signs of discomfort while doing so."

2

Mrs. Johnson also testified on behalf of Mr. Johnson. She testified that on the morning of January 20, 2015, Mr. Johnson came inside their house and complained of pain from lifting boxes. Although Mrs. Johnson stated she does not remember lifting the boxes, she testified she went outside and helped her husband load the truck. She also testified she helped him up the steps on the way back into their house. Mrs. Johnson stated that Mr. Johnson called her on his way to work, and she told him to report the injury to Mr. Welch. She testified he called her as he went to a jobsite and was upset because he felt like Mr. Welch did not care about his injury.

On cross-examination, Mrs. Johnson did not recall what Mr. Johnson did during the four days he was off from work prior to January 20, 2015. Mrs. Johnson testified she did not think Mr. Johnson worked on January 19, 2015, because either he or the kids were sick. Mrs. Johnson also testified she did not remember why Mr. Johnson was off from work on Thursday, January 22, 2015. She acknowledged she did not see the injury happen. Mrs. Johnson testified she guided Mr. Johnson up the steps on the way into their house. She also testified Mr. Johnson's injury was obvious to her because he had a hard time getting around and limped some.

The parties stipulated that Friday, January 23, 2015, was Mr. Johnson's last day to work for Stanley. At 4:05 p.m. on January 23, 2015, Mr. Johnson saw his personal physician, Dr. John Harris. (*See generally* Ex. 3.) He gave a history of "lifting tool boxes into his truck for work and felt acute pain in R lower back, associated with shooting pain down the posterolateral R leg, all the way to the foot." Mr. Johnson stated the incident occurred five days prior. He also advised he had no improvement, although he took "muscle relaxers and anti-inflammatories he had left over from previous injury." Dr. Harris diagnosed Mr. Johnson with acute sciatica and lumbar muscle spasms. He also prescribed medication for pain and inflammation and ordered physical therapy. Dr. Johnson "instructed [Mr. Johnson] to check with his employer to determine his next step for treatment under their workman's comp. policies. Specifically, if he needs to see their work. comp. physician, or if his treatment will be left to me to complete." During cross-examination, Mr. Johnson acknowledged he made a mistake when he told Dr. Harris that his injury occurred five days prior since it was a Sunday.

On Saturday, January 24, 2015, Mr. Johnson sent an e-mail to Mr. Welch. (Ex. 1, 1-A.) In the e-mail, he stated the following:

> I finally gave in yesterday afternoon and had to go see my doctor about my back. I am hurting bad enough that it hurts to walk. After him seeing me he has started treatment but has referred me to physical therapist to see how extensive it is. Since this happened at work from lifting those dang tool boxes in and out of this rental truck my doctor told me to go ahead and inform you since there may be a process that I need to follow.

3

Approximately four-and-a-half hours later, Mr. Welch responded to Mr. Johnson's e-mail. *Id.* Mr. Welch testified he first learned Mr. Johnson was alleging a work-related back injury when he received Mr. Johnson's e-mail. In his response to Mr. Johnson's e-mail, he stated, in pertinent part, as follows:

When and where did this happen?

Please plan on taking Monday off but call me around 9:00 a.m. so we can call HR and see what the next steps are to document this and what the appropriate actions are we need to follow. Given the situation, I think it wise to have a release from your doctor before returning to work.

Given the e-mail, I'm assuming you haven't called the number on our Clinical Information Wallcard? (attached) Copies of these are on the front table in the conference room. At this point, not sure if it's necessary to call them today since you've seen your own doctor but in the future we need to call these folks when any incident happens that you may need medical attention for.

Mr. Johnson replied to Mr. Welch's question by e-mail. He stated:

It happened when I was loading the tool boxes back into the truck Tuesday morning from where they thought my van was ready again lol. Doug I'm really sorry I'm not trying to cause any issues or complications and definitely don't want to jeopardize my job (lol I'm wanting my new van lol), honestly though it's all I can do to walk around at this point.

Mr. Johnson testified he called the number on the poster Mr. Welch attached to his e-mail. He stated he spoke to a nurse, who advised him to follow his doctor's orders.

On Monday, January 26, 2015, Mr. Johnson testified he spoke with Mr. Welch on the telephone about needing to start a claim. He stated Mr. Welch told him he wanted Mr. Johnson's tools back, his rental truck returned, and his laptop. Mr. Johnson stated he had the call on speakerphone, and his wife heard Mr. Welch tell him his job was most likely over.

On Thursday, January 29, 2015, Mr. Johnson provided a recorded statement to Rita Reeder, an adjuster for Stanley's insurer, the Hartford. (Ex. 1, 1-B.) In his statement, Mr. Johnson described the incident as happening between 7:30 and 8:00 a.m. on January 20, 2015. *Id.* at 6. Mr. Johnson provided the following description of the incident to Ms. Reeder:

4

And I was lifting, I was loading my tools into the pickup truck to get ready to head to the office because the week before previously they said that my van was ready for repair, re-, ready and done with the repairs. So I had off-loaded all of those tools, and then on, needless to say when I got my, went to get my van they didn't have it properly fixed. It's, the blinkers didn't work and stuff so we left it at the dealership. Well, Tuesday morning when I was loading up my tools, because I was off Monday 'cuz I had a sick child. Uh, I was loading my tools up and I lifted, I was lifting, what we have is called portable job boxes. They're roughly 48 inches long by 36 inches wide by 36 inches deep, square, and I was lifting one of those up to put it into the back of the truck so that I would have all my equipment and tools with me to head to the office to start the job that day, and when I picked it up, I, uh, set it in the back of the truck, and I don't know if I, like, as far as a pop or anything, I don't know, I just know instantly I had sharp pain running down my leg and up into my back. And it, at that p-, it, I mean, it hurt. I, when I went to turn around to take a step and everything I was just, every time I would put weight on my leg, at that very instant I started having sharp pains running down my leg really bad. And that's when it, that's when it, it had occurred.

*Id*. at 7.

Additionally, Mr. Johnson told Ms. Reeder he had never injured his back prior to January 20, 2015. *Id*. at 9-10. When the initial recorded statement concluded, Ms. Reeder advised Mr. Johnson she would contact him after she spoke with his employer. *Id*. at 22.

When Ms. Reeder contacted Mr. Johnson to complete his recorded statement, Mr. Johnson volunteered to her that he had "CCTV evidence of when [the accident] happened."[3] (Ex. 1, 1-C at 1.) Mr. Johnson told Ms. Reeder he had cameras on his house to watch his children outside. *Id*. at 3. He stated if he could not download the video footage he would "shut the whole DVR down just to save the hard drive, to where if I end up in court, I have it." *Id*. at 2-3. However, during cross-examination, Mr. Johnson acknowledged he was unable to download the video footage.

In his second recorded statement, Ms. Reeder asked Mr. Johnson if he reported to Mr. Welch a week and a half prior to January 20, 2015, that his back was hurting after he stepped off a ladder. *Id*. at 10. Mr. Johnson stated Mr. Welch asked him if he needed to go to a doctor, and he told him he would go if his back kept hurting. *Id*. Ms. Reeder stated Mr. Welch told her Mr. Johnson "declined medical treatment; that [he] indicated . . . that, that [Mr. Johnson had] lived with this for a long time." *Id*. at 11. Mr. Johnson

---

[3]The date Ms. Reeder took the second recorded statement is unclear. However, it appears she took the second statement either the following day or one day shortly thereafter.

stated there was "no medical evidence of any back injuries at all." *Id.* at 12. He stated he saw his doctor on the same day he stepped off the ladder, and the doctor diagnosed him with a pulled muscle. *Id.*

Mr. Welch testified Mr. Johnson did not actually report a work-related injury involving the ladder. Instead, he testified he questioned Mr. Johnson after seeing him leaning back with his hand on his back. He testified Mr. Johnson told him he "tweaked" his back when he stepped off a ladder. However, although Mr. Welch stated he asked Mr. Johnson twice if he needed to go to the doctor, Mr. Johnson told him he dealt with a back injury from a long time ago. Since Mr. Johnson related his back pain to an old injury, Mr. Welch testified he did not turn in a claim.

The medical records reflect that Mr. Johnson continued to treat with Dr. Harris. (Ex. 3.) Mr. Johnson underwent a lumbar MRI on February 25, 2015. *Id.* After receiving the MRI results, Dr. Harris referred Mr. Johnson to see an orthopedic physician. *Id.* Mr. Johnson saw Dr. Scott Hodges on March 24, 2015, for treatment of his "moderate to large right paracentral disc extrusion at L4 L5 causing moderate right paracentral canal stenosis and right L5 nerve root impingement." (Ex. 4.) Dr. Hodges recommended an urgent, right lumbar microdiscectomy. *Id.* On March 24, 2015, Dr. Hodges stated that Mr. Johnson stated his employer terminated him on March 23, 2015. *Id.* As of the hearing date, Mr. Johnson has not had surgery performed.

During the hearing, Mr. Johnson testified about his termination from Stanley due to expenses on his business card. He stated that Stanley's corporate office performed an audit of his expenses one to two months after his injury. The auditors contacted Mr. Johnson by telephone and told him they were looking at his credit card usage. Mr. Johnson testified he disclosed to the auditors one expense that was not work-related that occurred on January 26, 2015. He stated he and his wife went to Harbor Freight to buy an engine hoist because he works on cars at home, and his wife took his wallet into the store and used his company credit card. Mr. Johnson stated his personal credit card looks similar to his company credit card. He testified he did not think he made any other personal purchases on the company credit card.

Mr. Welch, Mr. Johnson's supervisor, testified Mr. Johnson also charged a backpack that came with a free accessory grill kit to his company credit card on January 23, 2015, which was not work-related. He also testified there were two to three purchases made at Walmart by Mr. Johnson on the company credit card over the weekend. Mr. Welch stated the company credit card is not for personal use. He also stated the only reimbursement mechanism in place at Stanley is for when an employee makes an out-of-pocket business expenditure and submits the receipt.

When asked during cross-examination if he ever used the Fleet card for personal use, Mr. Johnson testified he had not. However, Mr. Welch testified Mr. Johnson drove a

diesel rental truck in December 2014 and January 2015. During that time, Mr. Johnson made seven purchases of gasoline on the Fleet card. Mr. Welch testified Mr. Johnson made some of the gasoline charges on the same day, and some of the charges were on the weekend.

Regarding the toolbox purchased by Stanley, Mr. Welch testified he authorized the purchase of one toolbox. He did not know Mr. Johnson was unloading the tools or leaving them at his house. Instead, Mr. Welch testified it is a common practice to load and unload from a company van to a rental truck because the dealership has plenty of room in its parking lot. Regarding Mr. Johnson's company van being in the shop, Mr. Welch testified the service manager at Mountain View told him the plug wire had been ripped off, and it look like it had been manually ripped out.

Mr. Welch also testified regarding the company tools that Mr. Johnson provided to him. During March 2014 through January 2015, Mr. Johnson spent $13,178 on the company credit card. However, Mr. Johnson only returned a minimal amount of equipment, as demonstrated by the photograph he took of the equipment. (Ex. 11.) Although Mr. Welch testified Mr. Johnson also shipped a few pipe benders to Nicole Ringrose with Stanley, he testified he previously authorized Mr. Johnson to purchase many more items.

Mr. Johnson also testified regarding his application and receipt of short-term and long-term disability benefits through Stanley's employer-funded disability plan. He stated he applied on the Cigna website. Mr. Stanley initially testified he answered "no" on the disability form regarding whether the condition was work-related. However, he then testified he applied, checked it was work-related, disability benefits were declined, and appealed to Cigna. Mr. Stanley acknowledged he made a mistake in his previous testimony.

Mr. Johnson filed a Petition for Benefit Determination seeking temporary disability benefits. (T.R. 1.) The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice on July 30, 2015. (T.R. 2.) Mr. Johnson filed a Request for Expedited Hearing on September 11, 2015. (T.R. 3.) This Court heard the matter on November 10, 2015.

Mr. Johnson asks the Court to order medical benefits and temporary disability benefits. Stanley asks the Court to deny Mr. Johnson's claim based upon Mr. Johnson's lack of credibility. The parties stipulate that Tennessee has jurisdiction over Mr. Johnson's claim for his alleged injury of January 20, 2015.

## Findings of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n*, 725 S.W.2d 935, 937 (Tenn. 1987);[4] *Scott v. Integrity Staffing Solutions*, No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

### *Mr. Johnson Failed to Demonstrate a Likelihood of Success on the Merits at Trial*

The Court finds that Mr. Johnson failed to demonstrate a likelihood of success on the merits at trial. The pivotal issue of whether Mr. Johnson sustained a compensable injury turns on his credibility. Mr. Johnson's expedited hearing lasted approximately four hours. The Court had ample time and opportunity to observe Mr. Johnson's manner and demeanor. As recited above, there were multiple inconsistencies in Mr. Johnson's testimony. The inconsistencies ranged from matters of importance to matters that would otherwise be inconsequential. For example, there were inconsistencies regarding Mr. Johnson's testimony of how long it took him to perform the tool transitions. During his transcribed, recorded statement taken on or about January 29, 2015, Mr. Johnson stated, "it doesn't take more than ten minutes for me to load my tools up, if even that." (Ex. 1, 1-C, 16.) At the expedited hearing, Mr. Johnson testified it took him no more than an hour to load up his tools.

More importantly, the unrebutted testimony of Mr. Welch, Mr. Johnson's supervisor, was that Mr. Johnson made multiple, unauthorized expenditures on the company credit card and Fleet card between December 2014 and January 2015. During the months of December 2014 and January 2015, Mr. Johnson purchased gas numerous times with his Fleet card during the period of time he drove a diesel rental truck. Mr.

---

[4] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

Johnson made some of the gas purchases on the same day. Once auditors with Stanley's corporate office contacted him, Mr. Johnson acknowledged he purchased an engine hoist on his company credit card sometime after January 20, 2015. Mr. Welch also testified Mr. Johnson used the company credit card on January 23, 2015, to purchase a backpack that came with a free accessory grill kit. He further testified Mr. Johnson made two to three purchases at Walmart using the company credit card.

When considering the totality of all of the evidence introduced at the expedited hearing in this matter, the Court finds substantial doubt exists regarding whether Mr. Johnson sustained a work-related back injury on Tuesday, January 20, 2015. The testimony showed that Mr. Johnson did not work from Friday, January 16, 2015, through Monday, January 19, 2015. Neither Mr. Johnson nor his wife could recall what Mr. Johnson did during that time. Mr. Johnson alleged he injured his back at home on Tuesday, January 20, 2015, while loading toolboxes into his rental truck at home and reported the incident to Mr. Welch that morning. He worked on January 21, 2015. Mr. Johnson did not work on Thursday, January 22, 2015.

On Friday, January 23, 2015, Mr. Johnson saw Dr. Harris and alleged he injured his back while lifting toolboxes into his truck for work *five days prior*. If Mr. Johnson injured his back five days prior, it happened on Sunday, January 18, 2015, when he was off work. Given the many discrepancies in Mr. Johnson's testimony, as well as the unrebutted testimony of his supervisor, Mr. Welch, the Court does not believe that Mr. Johnson simply made a mistake regarding his date of injury when he saw Dr. Harris on Friday, January 23, 2015. Further, the Court finds Mr. Johnson's testimony that he cannot recall what he did between Friday, January 16, 2015, and Monday, January 19, 2015, to be a self-serving explanation.

When considering Mr. Johnson's credibility, the Court also finds it disturbing that during the time he alleged he sustained a work-related injury and e-mailed notice of his alleged injury to Mr. Welch, he was simultaneously acting in a dishonest manner by using his company credit card to make personal expenditures. On the same day that he saw Dr. Harris, Mr. Johnson purchased a backpack that came with a free accessory grill kit with the company credit card. On Monday, January 26, 2015, Mr. Johnson purchased an engine hoist at Harbor Freight to work on cars at his home.

Simply put, the evidence introduced at the expedited hearing convinces the Court that Mr. Johnson did not injure his back on January 20, 2015, while loading toolboxes into his rental truck for work. Even prior to the Reform Act of 2013, the liberal construction mandate for the Workers' Compensation Law did not require a court to disregard "discrepancies in an employee's testimony and other evidence which tends to disprove an employee's claim." *Kenney v. Shiroki North America, Inc.*, No. M2009-02484-WC-R3-WC, 2011 Tenn. LEXIS 182, at *13-*14 (Tenn. Workers' Comp. Panel Feb. 28, 2011). The Reform Act of 2013 removed the liberal construction previously

9

given to employees. After considering all of the testimony in this case, the Court finds Mr. Johnson did not sustain a compensable injury on January 20, 2015. Therefore, Mr. Johnson has not demonstrated that he is likely to prevail at a hearing on the merits.

**IT IS, THEREFORE ORDERED:**

1. Mr. Johnson's requested relief is denied.

2. This matter is set for an Initial (Scheduling) Hearing on January 12, 2016, at 10:00 a.m. Eastern Time.

   **ENTERED this the 11th day of December, 2015.**

   _Audrey Headrick_
   **Judge Audrey A. Headrick**
   **Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

A Scheduling Hearing has been set on January 12, 2016, at 10:00 a.m. Eastern Time, with **Judge Audrey A. Headrick, Court of Workers' Compensation Claims. You must call 423-634-0164 or toll free at 855-383-0001 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:
1. Affidavit of Kyle Johnson
2. Affidavit of Kristina Johnson
3. Medical records of Dr. John Harris
4. Medical records of Dr. Scott Hodges
5. Dr. Hodges' responses dated April 24, 2015
6. Affidavit of Doug Welch
7. Affidavit of Kevin Masticola
8. Time card of Mr. Johnson, January 11, 2015, through January 24, 2015
9. Wage Statement
10. Clinical consultation form
11. Photographs of tools

Technical record:[5]
1. Petition for Benefit Determination, June 19, 2015
2. Dispute Certification Notice, July 30, 2015
3. Request for Expedited Hearing, September 11, 2015
4. Response to Request for Expedited Hearing and Request for Evidentiary Hearing, September 18, 2015
5. Notice of Scheduled Hearing, October 7, 2015
6. Memorandum in Support of Employee's Petition for Medical and Temporary Disability Benefits, October 26, 2015

---

[5] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying the Requested Benefits was sent to the following recipients by the following methods of service on this the 11th day of December, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email/Mail Address |
|------|----------------|------------------|---------|------------|-----------|--------------------|
| Josh Ward, Esq. | | | | | X | josh@masseyattorneys.com |
| David Riley, Esq. | | | | | X | driley@gwtclaw.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov